UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD ALSTEEN,

       Plaintiff,

v.                                    Case No. 17-C-1060

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

## DECISION AND ORDER REVERSING COMMISSIONER'S DECISION

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Richard Alsteen's application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act. For the reasons set forth below, the Commissioner's decision will be reversed and remanded for further proceedings.

### BACKGROUND

On June 11, 2013, Alsteen filed an application for DIB with an alleged onset date of January 1, 2009, due to severe rheumatoid arthritis and back surgery. R. 212. Following the denial of his application initially and on reconsideration, Alsteen requested a hearing before an administrative law judge (ALJ). ALJ Edward P. Studzinski conducted a hearing on September 1, 2015. Alsteen, who was represented by counsel, and a vocational expert (VE) testified. R. 30–68.

At the time of the hearing, Alsteen was 54 years old, and lived with his wife and thirty-year-old son in a house in Green Bay, Wisconsin. Although Alsteen was self-employed as a computer technician, he testified that he has been unable to work eight hours a day since 2009. R. 48.

Alsteen's attorney indicated that Alsteen's medically determinable severe impairments included a history of spinal dysfunction with a laminectomy in 2008, along with severe rheumatoid arthritis, bilateral knee dysfunction, some edema of the hands, severe migraines, and seizures. R. 34. Alsteen testified that the rheumatoid arthritis affected his hands, knees, and back. R. 56. In particular, the rheumatoid arthritis in his hands prevented him from working with computers and holding pens; his knee pain prevented him from walking from the parking lot to his office; and his back pain prevented him from sitting in a chair for longer than 45 minutes. R. 53–55. Alsteen also reported that he had a seizure in July 2014. As a result of the seizure, Alsteen testified that he had difficulty remembering things. R. 45–46. Alsteen testified that either his wife or son did the cleaning and cooking, but he could drive short trips. R. 57–58.

In a decision dated November 17, 2015, the ALJ found Alsteen was not disabled. The ALJ concluded Alsteen had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date, and also met the insured status requirements.[1] R. 17. The ALJ found Alsteen had the following severe impairments: osteoarthritis, degenerative disc disease, and migraine headaches. He then determined that Alsteen's impairments did not meet or medically equal any listed impairments under 20 C.F.R. § 404, Subpart P, Appendix 1. R. 18.

The ALJ ultimately concluded Alsteen had the residual functional capacity (RFC) to perform light work and "to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in his ability to sit, stand, or walk throughout an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds. He is limited to working in non-hazardous environments,

---

[1] Though the ALJ noted that Alsteen's date last insured was June 30, 2014, the Appeals Council later clarified that the actual date last insured was September 30, 2014. R. 4–8.

2

i.e. no driving at work, operating moving machinery, working at unprotected height or around exposed flames and unguarded large bodies of water, and he should avoid concentrated exposure to unguarded hazardous machinery. The claimant can use his hands frequently to perform fine and gross manipulation, but he is incapable of performing precision manipulation, forceful grasping, or torqueing. The claimant is further limited to simple, routine tasks and work exposing him to no more than occasional and minor changes in the work setting." R. 18. With these limitations, the ALJ found that Alsteen was unable to perform any past relevant work. R. 23. Nevertheless, he concluded that there are jobs that exist in significant numbers in the national economy that Alsteen could have performed, such as cashier and mail clerk. R. 24. Based on these findings, the ALJ concluded Alsteen was not disabled within the meaning of the Social Security Act. R. 25.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Alsteen's request for review on June 14, 2017. After the Appeals Council issued its decision, Alsteen commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Alsteen raises several challenges to the ALJ's decision, but the court finds one dispositive. Alsteen asserts the ALJ erred in failing to obtain an updated medical opinion regarding Alsteen's new medical records. The ALJ relied on the medical opinions of state agency reviewing physicians Dr. Pat Chan and Dr. Douglas Chang to support his decision. Dr. Chan completed his physical residual functional capacity assessment in December 2013, and Dr. Chang completed his assessment in March 2014. R. 73, 78. Dr. Chan opined that Alsteen could perform light exertional work with the following limitations: occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand or walk for about six hours in a normal workday; sit for about six hours in a normal workday; frequently climb ramps or stairs, balance, kneel, crouch, and crawl; and occasionally climb ladders, ropes, or scaffolds. R. 73–74. Dr. Chang subsequently agreed with the limitations recommended by Dr. Chan on March 5, 2014. R. 85.

In making their determinations, both state agency physicians only considered medical evidence through October 3, 2013. The ALJ acknowledged that the state agency reviewing

4

physicians did not review the more recent evidence of Alsteen's seizures, headaches, and cognitive complaints and incorporated additional environmental and mental limitations to accommodate Alsteen's concerns. R. 22–23. Alsteen contends that the ALJ failed to support his decision with an opinion from a physician that reviewed all of the medical evidence in the record, particularly those records pertaining to Alsteen's July 2014 seizure and his subsequent headaches and cognitive deficits, including several objective tests such as a brain MRI and CT scan, electroencephalogram, and lumbar puncture. ECF No. 14 at 4.

Alsteen relies upon a number of recent Seventh Circuit cases to support his argument. *See, e.g.*, *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018); *Akin v. Berryhill*, 887 F.3d 314 (7th Cir. 2018. In *Moreno*, the Seventh Circuit found that the ALJ improperly relied on an "outdated mental-health assessment" because the assessment did not consider "later evidence containing new, significant medical diagnoses." *Moreno*, 882 F.3d at 728 (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)). In rejecting the Commissioner's argument that "the new mental-health records would not have made a difference because they showed improvement," the court stated:

> This argument is based on the ALJ's own assessment of the more recent records. That assessment was not justified under the circumstances of this case. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *Goins*, 764 F.3d at 680 (prohibiting ALJs from "playing doctor" by summarizing the results of a medical exam without input from an expert).

*Id.* at 729. The court remanded the case to the Agency with directions to conduct a new mental-health assessment. *Id.*

5

In *Akin*, the Seventh Circuit concluded the ALJ impermissibly "played doctor" by evaluating MRI results that had not been interpreted by a state agency physician. 887 F.3d at 317. The court reasoned that, "without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment." *Id.* (citing *Goins*, 764 F.3d at 680; *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)). The court therefore remanded the case to the Agency. *Id.* at 318.

The court recognizes the difficulties the ALJ and the Agency face in ensuring a state agency physician reviews the claimant's medical record in its entirety before completing a physical residual functional capacity assessment. A hearing with an ALJ is scheduled after the state agency physicians reach an opinion on the claimant's limitations and after the claimant's application is denied initially and upon reconsideration. Generally, the claimant continues to receive treatment up to, and even after, the date of the hearing. If the rule were that all new records required further review by the state agency consultants, the ALJ would be required to obtain supplemental opinions in every case. That would obviously be impractical. For this case, it is enough to note that the new records suggested significant events had occurred in the medical treatment after the state agency consultants conducted the review.

In light of the law in this circuit, the court concludes that the ALJ erred in relying on outdated assessments of Alsteen's medical records. The last state agency physician assessment was completed by Dr. Chang on March 5, 2014, and he only reviewed the medical evidence of record through October 3, 2013. The medical evidence relating to Alsteen's seizures, such as the brain MRI and CT scan, electroencephalogram, and lumbar puncture, were taken well after Dr. Chang's review. By failing to seek an updated medical opinion, the ALJ impermissibly "played doctor" and

6

interpreted these records himself.  Accordingly, the court concludes that the ALJ's failure to obtain an updated medical opinion in light of the new medical evidence constitutes reversible error.

## CONCLUSION

For the reasons above, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four).  The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this   24th   day of September, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
